**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| JIMMY SUSZKA, *on behalf of himself and all others similarly situated,* | Case No. |
| PLAINTIFF, | **CLASS ACTION COMPLAINT** |
| | **JURY TRIAL DEMANDED** |
| v. | |
| UNIVERSITY OF NOTRE DAME DU LAC, | |
| DEFENDANT. | |

Plaintiff Jimmy Suszka ("Plaintiff"), by and through the undersigned counsel, brings this class action against Defendant University of Notre Dame du Lac ("Notre Dame," the "University," or "Defendant"), and alleges as follows based upon information and belief, except as to the allegations specifically pertaining to him, which are based on personal knowledge.

## NATURE OF THE ACTION

1.     This is a class action lawsuit on behalf of all persons who satisfied their payment obligations of tuition and/or fees to attend Notre Dame for in-person and on-campus educational services and experiences for the semesters or terms affected by Coronavirus Disease 2019 ("COVID-19"), including the Spring 2020 semesters, and were denied such services, access, and experiences and had their course work moved to online only learning.

2.     Higher education is no different from any other industry in as much as consumers (i.e., students) have the ability to shop between different educational products offered by competitive institutions before ultimately purchasing the product that is right for them.

3.     Some colleges and universities offer an educational product without access to a

campus or in-person community, while others offer an educational product with access to a varied suite of services, activities, facilities, and opportunities through an on-campus, in-person educational experience.

4.    Mr. Suszka, a Notre Dame student enrolled and registered during the Spring 2020 semester, paid tuition and fees to enroll in Notre Dame's on-campus program, including all the benefits and services associated therewith, until mid-way through the spring of 2020, when that experience was taken away from Plaintiff and other students at Notre Dame.

5.    Plaintiff Suszka formed his expectations during his recruitment, application, admission, acceptance, enrollment, registration, and payment processes—as well as past performance—and through representations from Notre Dame about the nature of the services they have and would provide.

6.    The terms of Plaintiff Suszka contract with Notre Dame were formed through those contract formation processes based on Notre Dame's official policy documents, its secondary materials, its representations at registration, its history of past performance, its performance during the 2019-2020 academic year, and the existence of cheaper online-only programs.

7.    The Parties had a meeting of the minds: enrolled and registered students like Plaintiff would make tuition and fee payments, and Notre Dame would provide instruction, progress towards a degree, and access to campus, facilities, and in-person services.

8.    Plaintiff Suszka and other students paid all or part of the tuition for the Spring 2020 semester that was around $27,523.00 for undergraduate students, and mandatory fees for each semester of approximately $253.50 including a $75.00 Health Center Access Fee, a $125.00 Technology Fee, a $6.00 Observer Fee and a $47.50 Student Activity Fee ("Mandatory Fees").

9.     In March 2020, in response to the outbreak of the SARS-CoV-2 virus, the virus

2

that causes the COVID-19 disease (the "COVID-19 pandemic"), Notre Dame, like many other universities, transitioned to remote online-only instruction, canceled athletic and other on-campus recreational events, canceled student activity events, and ordered students to refrain from going on campus.[1]

10.     As a result of Defendants Covid-19 Response during the middle of the Spring 2020 semester, Defendant was only able to partially perform – by providing instruction and progress towards the degree, without access to campus (and all its benefits like labs, libraries, computer labs, study halls, facilities, buildings, classrooms, campus technologies, and all those services only available in the physical space of Notre Dame's physical main campus).

11.      The University's failure to provide the services for which tuition and the Mandatory Fees were intended to cover since approximately March 11, 2020, is a breach of the contracts between the University, Plaintiff, and the members of the Class, and as so is unjust.

12.     Despite the harsh reality that students could no longer enjoy the benefit of the bargain for which they pre-paid, Notre Dame refused to provide a pro-rated refund of tuition or fees tied to on-campus education, services, and amenities that were not available to students for a significant part of the Spring 2020 semester.

13.     In short, Plaintiff and the members of the Class pre-paid for tuition for on-campus, in person educational services and access to the campus and facilities, with all the appurtenant benefits offered by a world class university, and were provided a materially different alternative, which constitutes a breach of the contracts entered into by Plaintiff with the University.

14.      As to the Mandatory Fees, Plaintiff and the Class have paid fees for services and

---

[1] Notre Dame switches to online after canceling in-person classes, NOTRE DAME NEWS, https://news.nd.edu/news/notre-dame-switches-to-online-after-canceling-in-person-classes/ (last visited Feb. 13, 2025)

facilities which were simply not provided.

15.    Plaintiff and the Class have been deprived of access to these facilities and services as a result of Defendant's response to the Coronavirus. This failure also constitutes a breach of the contracts entered into by Plaintiff with Defendant.

16.    It cannot be disputed that the circumstances underlying this legal action are unfortunate and unprecedented. However, the students did not choose these circumstances, and they certainly did not agree to pay full tuition and fees for online-only education and services.

17.    Further, students like Plaintiff Suszka never agreed to shoulder the financial burden of the pandemic in the event that Notre Dame was unable to provide the ordinary, usual, expected, and contracted for services. There was simply no meeting of the minds when the student-university contract was formed to allocate the financial risk of a global event onto the students like Plaintiff.

18.    Ordinary and basis contract principles apply, regardless of the economic and political strength of the entity that failed to fulfil its obligation.

19.    It is unfair and unlawful for Notre Dame to retain tuition and fees for campus-based in-person education and services not being provided and to pass the losses on to the students.

20.    Importantly, Plaintiff does not challenge Defendant's discretion in adhering to federal, state, and local health guidelines, but rather challenges Defendant's decision to retain the tuition and fees, paid by Plaintiff and other students for in-person education, experiences, access to campus, and services, without providing such.

21.    Mr. Suszka brings this class action for damages, restitution, and declaratory relief resulting from Notre Dame's retention of the tuition and fees paid by Mr. Suszka and the other putative Class Members for in-person education and services not being provided. Specifically, this lawsuit seeks disgorgement of the prorated, unused amounts of the fees that Mr. Suszka and other

putative Class Members paid, but for which they (or the students on behalf of whom they paid) were not provided the benefit, as well as a partial pro-rated tuition reimbursement representing the difference in fair market value between the on-campus product for which they had paid, and the online product that they received.

22.    Plaintiff Suszka also seeks, in the alternative to his contract claims, an equitable return of tuition and fees that he pre-paid in advance of the Spring 2020 semester that resulted in Notre Dame being unjust enriched as a result of actions they took during the pandemic or benefits they unjust received. Under principles of equity in Indiana law, Notre Dame should not benefit to the detriment of its students.

## **PARTIES**

23.    Plaintiff Jimmy Suszka was an undergraduate student during the Spring 2020 semester. For the Spring 2020 semester, Notre Dame charged Plaintiff approximately $27,523.00 in tuition and approximately $253.50 in Mandatory Fees, including a $75.00 Health Center Access Fee, a $125.00 Technology Fee, a $6.00 Observer Fee and a $47.50 Student Activity Fee.

24.    Plaintiff Suszka is a citizen of Illinois.

25.    Plaintiff Suszka paid tuition and fees for in-person educational experiences, access to campus, it facilities, events, and other related collegiate services. Plaintiff Suszka has not been provided a pro-rated refund of the tuition for his in-person classes that were discontinued and moved online, or the Mandatory Fee he paid after the University's facilities were closed and events were cancelled.

26.    Defendant Notre Dame is a private university in Notre Dame, Indiana that was founded in 1842. The University offers numerous major fields for undergraduate students, as well as a number of graduate programs.

27.     Defendant's undergraduate and graduate programs includes students from many, if not all, of the states in the country.  Defendant has been recognized as one of the top universities in the United States.

## JURISDICTION AND VENUE

28.     The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class, as defined below, is a citizen of a different state than Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interests and costs.

29.     This Court has personal jurisdiction over Defendant because many of the acts and transactions giving rise to this action occurred in this District, and because Defendant conducts substantial business by operating its principal campus in this District and soliciting students residing in this District to attend its institution.

30.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because many of the acts and transactions giving rise to this action occurred in this District, specifically, the contracts that are the subject of this action were formed in this District, and the performance and breach of contract also occurred in this District.

## FACTUAL ALLEGATIONS.

31.     Plaintiff and Class Members paid for the Spring 2020 semester including for tuition and the Mandatory Fees.  The Spring 2020 semester was scheduled to commence on January 14, 2020, and end on or around May 8, 2020[2].

32.     Tuition at the University was approximately $27,523.00 for undergraduate

---

[2] https://registrar.nd.edu/assets/462294/yr2019_20.pdf (last visited Feb. 13, 2025)

students, and mandatory fees for each semester of approximately $253.50 including a $75.00
Health Center Access Fee, a $125.00 Technology Fee, a $6.00 Observer Fee and a $47.50 Student
Activity Fee, and similar such charges for graduate students.

33.     Plaintiff and the members of the Class paid tuition for the benefit of on-campus and
in-person educational services, access, and experiences, including but not limited to access to
campus and campus facilities, student services and activities, and live, interactive instruction
throughout the semesters.

34.     The relationship between a student and university is contractual in nature, but the
terms of the contract are rarely delineated and courts apply contract law rigidly.

35.     Plaintiff and Notre Dame entered into a contractual agreement where Plaintiff
would provide payment in the form of tuition and fees and Defendant, in exchange, would provide
in-person educational services, experiences, opportunities, and other related services.

36.     The terms of the contractual agreement were set forth in the documents and
materials provided to Plaintiff from Notre Dame, including, but not limited to, Notre Dame's
website, marketing materials, the application for admission submitted by Plaintiff and Class
Members, the acceptance letters received by Plaintiff and Class Members, the registration
materials, the course catalog, course listings, the registration materials, the bills/invoices, the
student handbook, policy documents, and other materials that were provided to the Plaintiff and
the Class, as well as Defendant's longstanding course of conduct, past performance, and the Parties
reasonable expectations.

37.     Prior to Plaintiff's enrollment, Notre Dame highlighted in marketing materials,
advertisements, and other documents that in-person and on-campus educational opportunities,
experiences, and services were invaluable to Plaintiff's educational experiences.

38.    Defendant offered these services to Plaintiff in exchange for payment of tuition and fees.

39.    Defendant offered these services to Plaintiff in exchange for payment of tuition and fees during various semesters during his enrollment, including the Spring 2020 semester.

40.    Plaintiff made payments to Defendant based on promises made by Notre Dame in those documents in lieu of receiving education at other universities or academic institutions – or enrolling in online only universities.

41.    In fact, Notre Dame offers only limited online programs through its college of business. These programs are significantly less expensive than its on-campus program.

42.    Defendant priced the cost of tuition based on the assumption of a full term of in-person learning.

43.    Upon information and belief, Defendant priced the Mandatory Fees based on the amount of services that students like Plaintiff would receive via in-person access.

44.    Throughout March 2020, the University made public announcements adjusting educational services and opportunities that affected Plaintiff.

45.    The University had not held any in-person classes since March 11, 2020 for undergraduate students during the Spring 2020 semester.  All classes since March 11, 2020 had only been offered in a remote online format with no in-person instruction or interaction.

46.    Most of the services for which the Mandatory Fees were assessed were also terminated or cancelled at or about this time, such as access to University's health and wellness facilities, programs or services; fitness facilities; student events or sports; and an in-person commencement.

47.    The Mandatory Fees charged by Notre Dame include a Health Center Access Fee,

a Technology Fee, an Observer Fee, and a Student Activity Fee, and other similar and related fees.

48.    Defendant has represented that these Mandatory Fees are associated with specific services that Defendant provides. For example, Defendant represents that:

a.  Technology Fee – "is charged to undergraduate, graduate, law and MBA students' accounts each semester. It provides partial funding for the University's enterprise-wide technology infrastructure, which provides all students access to the Internet, e-mail, courseware, campus clusters, and a wide array of the latest software. It also provides for the growth in student services, such as course and degree requirements, web registration, and value-added Internet-related capabilities."[3]

b.  Health Center Access Fee - "is a per semester fee charged to undergraduate, graduate, law and MBA students' accounts each semester. It provides students access to all services at University Health Services and University Counseling Center, including 24-hour medical assistance and counseling/mental health assistance, alcohol and drug education programs, as well as health education and wellness programs. It also provides partial funding to address increasing student health and wellness needs, along with funding to maintain health facilities."[4]

c.  Student Activity Fee – "is a per semester fee charged to undergraduate students to support student body-sponsored events held on campus and student government activities."[5]

d.  Observer Fee – "is a per semester fee charged to undergraduate students for the

---

[3] https://studentaccounts.nd.edu/rates/fee-descriptions/ (last visited Feb. 13, 2025)
[4] *Id*.
[5] *Id*.

daily student newspaper."[6]

49.    Members of the Class have demanded the return of the prorated portion of tuition, and have taken to an online petition to demand the same.[7] As one student put it, "[s]tudents learn in many different ways and a lack of physical instruction, professional critique, and face to face advising from faculty will create significant challenges for many learners." while another stated, "[t]his level of education isn't what I was promised as a Notre Dame student."[8]

50.    Despite the demand, Notre Dame has not provided reimbursement or refund information regarding tuition or the Mandatory Fees.

51.    Students attending Notre Dame's Spring 2020 semesters did not choose to attend an online only institution of higher learning but instead chose to enroll in the University's campus-based, in-person educational services – with the understanding that Notre Dame would provide access to campus, access to the community, and on-campus/in-person educational opportunities, services, and experiences.

52.    On its website, Notre Dame markets the University's on-campus experience and opportunities as a benefit to students. "Notre Dame stands on 1,250 acres considered by many to be among the most beautiful possessed by any university in the nation. From the collegiate Gothic architecture and park-like landscape to exquisite outdoor sculpture and breathtaking views, Notre Dame's campus is a visual splendor. Even its more recently constructed buildings that house state-of-the-art academic and student life facilities fit within a cohesive visual aesthetic that preserves tradition amid progress."[9]

---

[6] *Id.*
[7] https://www.change.org/p/the-university-of-notre-dame-university-tuition-reduction-due-to-covid-19 (last visited Feb. 13, 2025)
[8] *Id.*
[9] https://www.nd.edu/campus-life/ (last visited Feb. 13, 2025)

53.     The University uses its website, promotional materials, circulars, admission papers, and publications to tout the benefit of being on campus and the education students will receive in its facilities. "All undergraduate students begin in one of our 33 on-campus residence halls to support their formation as they pursue their studies, develop healthy relationships, become servant leaders, and reflectively and prayerfully discern their futures. While each of the halls is a world unto itself, collectively they combine to create a unified campus community that is unlike any other in American higher education. This community is rich in tradition; Notre Dame is alive with events that are woven into the fabric of campus life and enliven the student experience each year."[10]

54.     Defendant marketed and conveyed the campus and in-person experiences through sample materials such as its website, student bulletins, acceptance letters, registration and enrollment materials, and other documents sent to current and prospective students which detailed and highlighted the types of in person and on-campus access that was available to students that satisfied their payment obligations of tuition and fees to Notre dame.

55.     In the University's standardized acceptance letter, it conveys a picture of the gates to campus and welcomes students, along with indications on how the students can formally accept that offer of enrollment.

56.     In fact, the University requires "All undergraduate students begin in one of our 33 on-campus residence halls to support their formation as they pursue their studies, develop healthy relationships, become servant leaders, and reflectively and prayerfully discern their futures. While each of the halls is a world unto itself, collectively they combine to create a unified campus community that is unlike any other in American higher education. This community is rich in

---

[10] *Id.*

11

tradition; Notre Dame is alive with events that are woven into the fabric of campus life and enliven the student experience each year."

57.     Further Defendant's Undergraduate bulletin provides numerous references to campus and the in-person nature of the services that Notre Dame provides to students who pay tuition and fees:

a.  This statement speaks of the University of Notre Dame as a place of teaching and research, of scholarship and publication, of service and community.[11]

b.  The emphasis on community in Catholicism explains why Notre Dame historically has fostered familial bonds in its institutional life.[12]

c.  As a Catholic university, one of its distinctive goals is to provide a forum where through free inquiry and open discussion the various lines of Catholic thought may intersect with all the forms of knowledge found in the arts, sciences, professions, and every other area of human scholarship and creativity.[13]

d.  The University prides itself on being an environment of teaching and learning that fosters the development in its students of those disciplined habits of mind, body, and spirit that characterize educated, skilled, and free human beings.[14]

e.  Among [Notre Dame's] conspicuous features are its academic reputation, an elaborately designed and golden-domed administration building, a famous collegiate football team, a popular shrine to the Mother of God, two fascinating lakes, a pleasantly landscaped campus, and a spirited student body surrounded by

---

[11] https://registrar.nd.edu/assets/462343/boi1920ug.pdf, pg. 10. (last visited Feb. 13, 2025)
[12] Id.
[13] Id.
[14] Id.

an intensely loyal community of alumni and friends who unabashedly refer to themselves as the Notre Dame "family."[15]

f.  Notre Dame is a vibrant academic community dedicated to scholarship and the advancement of knowledge, where students find opportunities on campus and abroad to develop initiative and leadership, and to learn by being fully engaged in our classrooms, libraries, research laboratories, studios, and residence halls among other venues.[16]

g.  Notre Dame offers its students a quality education, made possible by an excellent faculty, advanced research facilities, experienced administration, and a well-developed educational philosophy. Education here also extends far beyond coursework and research, to the development and formation facilitated by residential and spiritual life, student development, and a culture grounded in the University's Catholic, Holy Cross mission, which seeks to educate both the mind and the heart.[17]

h.  The Division of Student Affairs enriches the experience of Notre Dame students by offering services, resources, and engagement opportunities designed to develop students to their full potential. The Division oversees residential and extracurricular programs that promote community, faith, wellness, service, and discernment for the University's student body.[18]

i.  Residential life is perhaps the most distinctive feature of the Notre Dame

---

[15] Id.
[16] Id. at 11.
[17] Id.
[18] Id.

experience.[19]

    j.    Notre Dame has over 500 student clubs and organizations for interested students, which encompass academic, athletic, cultural, performing arts, social service, and special interest pursuits.[20]

    k.    Athletic contests at Notre Dame are an integral part of the social life as well as an opportunity for the athletically gifted to compete against the nation's best.[21]

58.    Other documents and materials provided reference and representations of the nature of campus-based educational services that the University would provide – throughout enrollment, acceptance, registration, and payment processes.

59.    Many of those documents are not available to the Named Plaintiff in the filing of this action, as they are solely possessed and maintained by the University.

60.    However, that is not what students, including Plaintiff, received during the semesters affected by Covid-19.

61.    According to a public release on March 11, 2020, Defendant announced "Beginning Monday, March 23 and continuing through at least April 13, all in-person classes will be suspended, to be replaced with virtual instruction and other alternative learning options. Furthermore, there will be no classes in any format the week of March 15 to allow faculty time to make the adjustment to on-line instruction."[22] In the same release Defendant urged students to stay home or return home instead of returning to campus.[23] In a follow up release on March 18, 2020

---

[19] Id.

[20] Id. at 12.

[21] Id.

[22] https://web.archive.org/web/20201019103647/https://here.nd.edu/news/father-jenkins-in-person-classes-suspended-moved-online/ (last visited Feb. 13, 2025)

[23] *Id*.

Defendant announced that all classes will remain online for the remainder of the semester.[24]

62.    After Notre Dame converted to online only learning, the educational services and access offered to Notre Dame students was materially different in practically every aspect as compared to what was promised and what the educational services and access afforded to Plaintiff and the Class once was.

63.    During the online portion of the Spring 2020 semesters, Notre Dame used programs by which previously recorded lectures were posted online for students to view on their own or by virtual Zoom meetings. Therefore, there was a lack of access to campus, including hands-on, in-person, or on-campus classroom interaction among teachers and students, and among students that was a material part of the Parties contract.

64.    Plaintiff and the Class have been deprived of the opportunity for collaborative learning and in-person dialogue, feedback, and critique.

65.    Plaintiff and the Class were denied access to facilities such as libraries, laboratories, computer labs, recitations, and study rooms, which are integral terms of the agreement.

66.    These same facilities were promoted by the University as integral to the on-campus educational services it was providing.

67.    Plaintiff and the Class were denied access to activities offered by campus life, which foster intellectual and academic development, independence, and networking for future careers.

68.    Notre Dame priced their tuition and Mandatory Fees based on the on-campus and in-person educational services, opportunities and experiences it was providing on campus.

---

[24] https://web.archive.org/web/20210625043044/https://here.nd.edu/news/fr-jenkins-in-person-classes-suspended-for-remainder-of-semester-2/ (last visited Feb. 13, 2025)

69.     Notre Dame has not made any refund of any portion of the tuition Plaintiff and the Class paid for during the semesters affected by Covid-19, and have offered no discount, rebates, or refunds going forward.

70.     Notre Dame did not refund any portion of the Mandatory Fees it collected from Plaintiff and the members of the Class for the affected semester even though it closed or ceased operating the services and facilities for which the Mandatory Fees were intended to pay. For example, Plaintiff and the Class were denied access to the Health Center and student activities, both of which are funded by the Mandatory Fees.

71.     Plaintiff and the Class members are therefore entitled to a pro-rated refund of the tuition and Mandatory Fee they paid for the Spring 2020 semester for the remaining days of that semester after classes moved from in-person to online and facilities were closed, and for the future semesters where in-person classes are cancelled and moved online.

72.     Defendant's practice of failing to provide reimbursements for tuition and Mandatory Fees despite the diminished value of the education and other experiences that it provided, and the reduced benefits associated with the fees, as alleged herein, violates generally accepted principles of business conduct.

## CLASS ACTION ALLEGATIONS

73.     Plaintiff brings this case individually and, pursuant to Ind. Trial Rule 23, on behalf of a proposed class defined as:

> All Notre Dame Students who satisfied their payment obligations of tuition and/or the Mandatory Fees to attend in-person class(es) at the University of Notre Dame during the Spring 2020 semester and which student had or has their class(es) moved to online learning (the "Class").

74.     Plaintiff reserves the right to modify or amend the definition of the proposed Class if necessary before this Court determines whether certification is appropriate.

75.     This action has been brought and may properly be maintained on behalf of the Class proposed herein under the criteria of FRCP 23.

76.     The Class is so numerous that joinder of all members is impracticable.  Although the precise number of Class members is unknown to Plaintiff, the University has reported that an aggregate of 12,681 or more undergraduate and graduate students were enrolled for the 2019-2020 school year. The names and addresses of all such students are known to the University and can be identified through the University's records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

77.     The questions here are ones of common or general interest such that there is a well-defined community of interest among the Class members.  These questions predominate over questions that may affect only individual members of the Class because Notre Dame has acted on grounds generally applicable to the Class.  Such common legal or factual questions include, but are not limited to:

    a.  Whether the University accepted money from Plaintiff and the Class members in exchange for the promise to provide an in-person and on-campus live education, as well as certain facilities and services, throughout the semesters affected by Covid-19;

    b.  Whether Defendant breached its contracts with Plaintiff and the members of the Class by failing to provide them with an in-person and on-campus live education after March 11, 2020;

    c.  Whether Defendant breached its contracts with Plaintiff and the Class by failing to provide the services and facilities to which the Mandatory Fees pertained after mid-March 2020;

    d.  Whether Defendant is unjustly enriched by retaining all of the tuition and Mandatory Fees during the terms when the University has been closed, and Plaintiff and the members of the Class have been denied an in-person and on-campus live education and access and the services and facilities for which the Mandatory Fees were paid; and

     e.  The amount of damages and other relief to be awarded to Plaintiff and the Class members.

78.    Plaintiff's claims are typical of the claims of the members of the Class because Plaintiff and the other Class members each contracted with Defendant for it to provide an in-person and on-campus live education for the tuition they paid and the services and facilities for the Mandatory Fee that they paid, that the University stopped providing in March.

79.    Plaintiff is a more than adequate class representative.  In particular:

    a)  Plaintiff is committed to the vigorous prosecution of this action on behalf of himself and all others similarly situated and has retained competent counsel experienced in the prosecution of class actions and, in particular, class action litigation;

    b)  His interests do not conflict with the interests of the other Class members who he seeks to represent;

    c)  No difficulty anticipated in the management of this litigation as a class action; and

    d)  Plaintiff's legal counsel has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

80.    Class members' interests will be fairly and adequately protected by Plaintiff and his counsel.

81.    It is impracticable to bring members of the Classes individual claims before the Court. Class treatment permits a large number of similarly situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender.  The benefits of the class mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.  A class action is superior to other available methods

for the fair and efficient adjudication of this litigation. The damages or financial detriment suffered by individual Class members are relatively small compared to the burden and expense of individual litigation of their claims against the University. It would, thus, be virtually impossible for the Class, on an individual basis, to obtain effective redress for the wrongs committed against them. Furthermore, individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

82.    Plaintiff also seeks class certification for injunctive and declaratory relief under FRCP 23, at the appropriate juncture.

### FIRST CLAIM FOR RELIEF
### BREACH OF CONTRACT
### (On Behalf of Plaintiff and the Class)

83.    Plaintiff repeats and re-alleges the factual allegations above, as if fully alleged herein.

84.    Plaintiff brings this claim individually and on behalf of the members of the Class.

85.    Plaintiff and Class members entered into identical, binding contracts with Defendant by accepting Defendant's offer to register for on-campus classes in accordance with the terms of the Catalogs, Defendant's publications, and Defendant's usual and customary practice of providing on-campus courses.

86.    The language on Notre Dame's website, Catalogs, and in other materials made available to students promising in-person instruction, campus facilities, services, and resources

became terms of the contract. That is, at the time of contract, the parties had the reasonable expectation that, in exchange for tuition and fee payments, Defendant would provide Plaintiff and Class members with an on-campus education. The nature of the instruction provided by Notre Dame at the time Plaintiff and Class members enrolled (i.e., in-person classroom instruction) as well as the facilities and resources offered by Notre Dame were and are material terms of the bargain and contractual relationship between students and Defendant.

87.     Under their contracts with Defendant, and per Defendant's usual and customary practice of providing on-campus courses, Plaintiff and Class members registered for on-campus courses and paid Defendant's tuition and/or fees for Defendant to provide in-person instruction and access to Defendant's facilities.

88.     Plaintiff and Class members accepted and intended to use and enjoy Defendant's on-campus classes and facilities.

89.     Plaintiff and Class members have fulfilled all requirements of their mutually agreed contracts, having followed the Catalogs' policies, procedures, and requirements for registering and paying for on-campus courses and access to on-campus facilities and services. Plaintiff and Class members have paid Defendant for all financial assessments starting in the Spring 2020 semester.

90.     By ceasing in-person instruction, relegating Plaintiff and Class members exclusively to remote instruction, and shutting down campus facilities and opportunities to Plaintiff and the Class, Defendant failed to provide the services for which Plaintiff and Class members bargained for when they entered into their contractual relationship with Defendant.

91.     Defendant's failure to provide in-person instruction and shutdown of campus facilities amounts to a material breach of the contract.

92.     The tuition, fees, and other costs that Plaintiff and the Class paid were intended to

cover in-person educational and extracurricular services. Defendant, however, has failed to provide the education and services due under the contracts, yet have improperly retained the funds Plaintiff and the other Class members paid or agreed to pay.

93.     Plaintiff and members of the Class have suffered damages as a direct and proximate result of Defendant's breach, including being deprived of the education, experience, and services that they were promised and reasonably expected to obtain, and for which they have paid.

94.     Plaintiff and Class members are entitled to an award of money damages or partial restitution in an amount to be determined at trial as redress for Notre Dame's breach, including but not limited to prorated reimbursement of the tuition, fees, and other expenses for services that Defendant failed and continues to fail to deliver fully.

95.     Defendant's performance under the contracts is not excused because of COVID-19. Even if performance was excused or impossible, Defendant would nevertheless be required to return the funds received for services and/or goods that it did not provide.

**SECOND CLAIM FOR RELIEF**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and the Class)**

96.     In the alternative, to the extent that Defendant contends that there is not a contract between the parties with respect to access to campus and on-campus educational services and experiences, Plaintiff brings this claim for unjust enrichment individually and on behalf of the members of the Class.

97.     By assessing and accepting the tuition and the fees for the Spring semester, the University agreed to, among other things, provide an in-person and on-campus educational services as well as access to facilities to which such monies were intended to cover.

98.     Defendant has retained the benefits of the amount of tuition and fees that Plaintiff

and Class members have provided – without providing the benefits that Plaintiff and Class members were owed.

99.    For example, Defendant failed to provide Plaintiff and Class Members access to any on-campus facility after March 11, 2020. Yet Defendant assessed Plaintiff with tuition and fees that covered the cost of upkeep and maintenance of such facilities, services, costs, and expenses.

100.    Plaintiff was not able to access such facilities or services remotely.

101.    Plaintiff paid tuition and fees with the expressed understanding that such costs included the in-person classes, services, opportunities, and experiences that Notre Dame has previously marketed, promoted, or made available prior to Covid-19.

102.    The costs incurred for having an online only program are significantly lower than the overhead needed to provide classes and services on campus.

103.    Defendant has been unjustly enriched by Plaintiff's payment of tuition and fees.

104.    Despite not being able to provide such services, Notre Dame failed to provide reimbursements for tuition and fees despite the diminished value of the education and other experiences that it provided and the reduced benefits associated with the fees.

105.    Plaintiff and members of the Class have sustained monetary damages as a result of each of Defendant's breaches of the covenant of good faith and fair dealing.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that judgment be entered in favor of Plaintiff and the Class against Defendant as follows:

(a)    For an order certifying the Class under the Ind. Trial Rule 23 and naming Plaintiff as representative of the Class and Plaintiff's attorneys as Class

Counsel to represent the Class;

(b)     For a judgment in favor of Plaintiff and the Class on all counts asserted herein;

(c)     For compensatory damages in an amount to be determined by the trier of fact;

(d)     For an order compelling disgorgement of the ill-gotten gains derived by Defendant from its misconduct;

(e)     For an award of restitution and all other forms of equitable monetary relief;

(f)     For an order awarding Plaintiff's reasonable attorneys' fees, costs, and expenses;

(g)     For an order awarding pre- and post-judgment interest on any amounts awarded; and,

(h)     For an order awarding such other and further relief as may be just and proper, including injunctive relief and declaratory relief.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Dated: <u>July 18, 2025</u>                              Respectfully submitted,


<u>/s/ *Scott D. Gilchrist*         </u>
Scott D. Gilchrist
Atty. No. 16720-53
CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, IN 46204
P: 317-636-6481
F: 317-636-2593
sgilchrist@cohenmalad.com

Michael A. Tompkins
Anthony M. Alesandro
**LEEDS BROWN LAW, P.C.**
One Old Country Road, Suite 347
Carle Place, NY 11514
(516) 873-9550
mtompkins@leedsbrownlaw.com

*Counsel for Plaintiff and Proposed Class*