UNITED STATES DISTRICT COURT
NORTHERN DISTRICT of INDIANA
SOUTH BEND DIVISION

JIMMY SUSZKA,

    Plaintiff,

    v.

UNIVERSITY of NOTRE DAME DU LAC,

    Defendant.

Case No. 3:25-CV-626-CCB-SJF

## OPINION AND ORDER

On July 18, 2025, Plaintiff Jimmy Suszka filed a class action lawsuit against Defendant University of Notre Dame Du Lac, alleging breach of contract and unjust enrichment resulting from the University's transition to remote education during the Spring 2020 semester. Defendant has moved to dismiss Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6) and has also made a Rule 23 motion to strike the class allegations in the complaint for violating Indiana Code Section 34-12-5-7. The Court now rules on both motions.

### BACKGROUND

Plaintiff Jimmy Suszka was a full-time undergraduate student enrolled at Defendant Notre Dame Du Lac ("Notre Dame") who registered for the Spring 2020 semester and paid the associated tuition and fees to attend. (ECF 1 ¶¶ 1, 8). Midway through the semester in March 2020, Notre Dame, like many universities, responded to the COVID-19 pandemic by transitioning to remote-only instruction and canceling

athletic, recreational, and student activity events. (*Id.* ¶ 9). Notre Dame did not provide any tuition or fee refunds after the switch to remote education. (*Id.* ¶ 25). Now, Mr. Suszka has sued Notre Dame requesting a pro-rated fee and tuition refund for his in-person classes that were canceled or moved online during the Spring 2020 semester. (*Id.* ¶ 21). Mr. Suszka argues that Notre Dame owes him these amounts because it breached an implied contract agreeing to provide a full semester of in-person and on-campus services. (*Id.* ¶¶ 19–21). Alternatively, Mr. Suszka argues that Notre Dame owes him these amounts under an unjust enrichment claim. (*Id.* ¶¶ 21–22). Mr. Suszka has brought this case both individually and on behalf of a class including all persons who "satisfied their payment obligations of tuition and/or fees to attend Notre Dame for in-person and on-campus educational services and experiences for the semesters or terms affected by [COVID-19], including the Spring 2020 semesters, and were denied such services, access, and experiences and had their course work moved to online only learning." (*Id.* ¶ 1). Notre Dame has moved to dismiss the case under Federal Rule of Civil Procedure 12(b)(6), arguing that Mr. Suszka fails to state a claim for either breach of contract or unjust enrichment. (ECF 18). Notre Dame has also moved under Federal Rule of Civil Procedure 23 to strike Mr. Suzska's class action allegations for violating Indiana Code Section 34-12-5-7, which prevents plaintiffs from filing class actions against universities involving COVID-related breach-of-contract claims in Indiana. (ECF 20).

## STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554 (2007)); *accord McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2013) (a complaint "must contain 'allegations plausibly suggesting (not merely consistent with)' an entitlement to relief"). "[A] formulaic recitation of the elements of a cause of action," and "naked assertions" without supporting facts are inadequate. *Id.* (quoting *Twombly*, 550 U.S. at 557). A complaint must contain enough factual matter to raise the possibility of relief above a speculative level. *Id.* at 678. A complaint therefore fails to state a claim if it is not "sufficient to provide the defendant with 'fair notice' of the Plaintiff's claim and its basis." *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 934 (7th Cir. 2012) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Whether a claim is sufficiently plausible to survive a motion to dismiss is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Iqbal,* 556 U.S. at 678, 129 S. Ct. 1937).

## ANALYSIS

### I.    Breach of Contract

Mr. Suszka argues that there was an implied contract between himself and Notre Dame under which Notre Dame would provide "a full semester of in-person and on-campus educational services." (ECF 24 at 6). The parties dispute whether Mr. Suszka's

3

allegations regarding Notre Dame's conduct, statements, and materials are sufficient to state a claim that Notre Dame implicitly promised him those services.

For contract claims, Indiana state law requires that there be (1) a valid contract between the parties, (2) a breach of that contract, and (3) damage to the plaintiff as a result. *Murat Temple Ass'n, Inc. v. Live Nation Worldwide, Inc.*, 953 N.E.2d 1125, 1128 (Ind. Ct. App. 2011). A valid contract can be express or implied. When there is no express agreement, an implied contract "may be inferred from the conduct, situation, or material relations of the parties." *Money Store Inv. Corp. v. Summers*, 909 N.E.2d 450, 459 (Ind. Ct. App. 2009).

Indiana courts "characterize[] the legal relationship between a student and a university as one of implied contract." *Amaya v. Brater*, 981 N.E.2d 1235, 1240 (Ind. Ct. App. 2013). Still, "the terms of the contract . . . are rarely delineated, nor do the courts apply contract law rigidly." *Neel v. Indiana Univ. Bd. of Trustees*, 435 N.E.2d 607, 610 (Ind.Ct.App.1982). Rather, courts look to a wide variety of materials, including "the catalogues, bulletins, circulars, and regulations of a university." *Brater*, 981 N.E.2d at 1240 (citing *Ross v. Creighton Univ.*, 957 F.2d 410, 416 (7th Cir. 1992)).

After many universities switched to online-only education in COVID-19's wake, students filed lawsuits requesting refunds for education and tuition payments that they had made in expectation of in-person education ("COVID contract claims"). In deciding those cases, both Indiana state courts and the Seventh Circuit have clarified the proper analysis for these types of claims.

In the 2022 case *Trustees of Indiana University v. Spiegel*, the Court of Appeals of Indiana affirmed the lower court's denial of a motion to dismiss a COVID contract claim. 186 N.E.3d 1151 (Ind. Ct. App. 2022). In *Spiegel*, the plaintiff cited a variety of materials to show an implied contract for in-person instruction. These included statements on university websites and marketing materials, handbooks, course catalogs, syllabi, the existence of separate online degree programs, and prior university conduct. *Id.* at 1159–60. The court found that these allegations were "sufficient to state a claim that the Universities 'intended to bind themselves to providing in-person education in exchange for retaining Plaintiffs' entire tuition payments for traditional on-campus degree programs.'" *Id.* at 1160 (quoting *Shaffer v. George Washington Univ.*, 27 F.4th 754, 764 (D.C. Cir. 2022)). *Spiegel* is the most recent, on-point, and authoritative Indiana case cited by the parties.[1]

Meanwhile, the Seventh Circuit has outlined the proper Rule 12(b)(6) analysis for COVID contract claims. In *Gociman v. Loyola Univ. of Chicago* (2022), the Seventh Circuit vacated a district court's dismissal of a student's implied contract claim, holding that the plaintiffs "plausibly allege an implied promise by [the university] to provide in-person instruction that the students paid tuition for but failed to receive." 41 F.4th 873, 885 (7th Cir. 2022). In deciding whether the plaintiffs plausibly stated a claim under Rule 12(b)(6),  the Seventh Circuit looked to the same evidence as the Indiana Court of

---

[1] The Court in *Spiegel* did not analyze Ind. Code § 34-12-5-7 (2021). *Spiegel*, 186 N.E.3d at 1162–63 ("The Universities and the amicus ask us to consider the enforceability of [Indiana Code § 34-12-5-7] . . . . We decline their invitation. It is well settled that a party may not raise an issue for the first time on appeal."). This order will discuss the applicability of that statute in Part III.

Appeals in *Spiegel*: descriptions of in-person and on-campus experiences in the university's various marketing and administrative materials, as well as pre-pandemic practice and the different rates for the university's online versus on-campus programs. *Id.* at 884.

Then in *Hernandez v. Illinois Institute of Technology* (2023), the Seventh Circuit reversed another lower court dismissal of a COVID contract claim against a university, holding that "The school's customs, conduct, and materials such as 'catalogs, bulletins, circulars, regulations, and other publications' may support an implied contract and its terms." 63 F.4th 661, 667 (7th Cir. 2023).

Finally, in *Deslie v. McKendree University* (2023), the Seventh Circuit yet again reversed a lower court dismissal, reiterating that "[t]he crux of our holding in *Gociman* was that students can establish the existence of an implied contract for in-person instruction and access to campus facilities by pointing to four primary sources of evidence," — "[a] university's statements in its official publications, such as course catalogs; its class registration system and related policies; its pre-pandemic practice; and any cost differential between in-person and online programs." 73 F.4th 523, 525 (7th Cir. 2023). The Seventh Circuit reversed the lower court even though the plaintiff had not made allegations referencing all four evidentiary categories from *Gociman*, holding that the list was not an "inflexible four part test" but possible evidence from which "a reasonable factfinder could infer" an implied contract. *Id.* at 528.

Here, Mr. Suszka has made a number of factual allegations and citations to support the existence of an implied contract with Notre Dame, including:

- Discussion (on its website) of how "Notre Dame stands on 1,250 acres considered by many to be among the most beautiful possessed by any university in the nation" and includes "recently constructed buildings that house state-of-the-art academic and student life facilities." (ECF 1 ¶ 52).

- Discussion (in promotional materials, circulars, and admission papers) of how: "All undergraduate students begin in one of our 33 on-campus residence halls to support their formation as they pursue their studies, develop healthy relationships, become servant leaders, and reflectively and prayerfully discern their futures." (*Id.* ¶ 53).

- A requirement that all beginning students live in an on-campus residence hall. (*Id.* ¶ 56).

- Undergraduate bulletin references to Notre Dame's residential life, athletic activities, classrooms, libraries, research libraries, studios, and "500 student clubs and organizations encompassing academic, athletic, cultural, performing arts, social service, and special interest pursuits." (*Id.* ¶ 57).

- Various fees, including a health center access fee, technology fee, and student activity fee. (*Id.* ¶¶ 47–48).

- The existence of "limited online programs" that are less expensive than Notre Dame's on-campus program. (*Id.* ¶¶ 41, 102).

- Notre Dame's prior practice of providing in-person and on-campus instruction since its founding in 1842 until the Spring 2020 semester. (*Id.* ¶¶ 10, 26, 85).

At this preliminary pleading stage, it is almost impossible to materially distinguish these allegations from those on which both the Indiana Court of Appeals and the Seventh Circuit have denied dismissal. Mr. Suszka references statements on Notre Dame's website and marketing materials, the university bulletin, and university guidelines. These allegations resemble those made by the plaintiffs in *Spiegel* and in the Seventh Circuit in that many of the resources, benefits, or activities discussed in the materials seem to presume an in-person education. *See supra* pages 4–6.

If anything, this case has greater pleading specificity than several of those cases. For example, unlike many of the Indiana and Seventh Circuit cases, Mr. Suszka alleges that Notre Dame *mandates* on-campus housing in a dormitory. Mr. Suszka also provides direct quotes from university materials and alleges the existence of a less expensive online degree program. In *Delisle*, where there were no direct quotes of any university materials implying on-campus instruction, only "naked assertions" about class-registration systems, and no alleged "tuition difference between [Defendant university's] online and in-person programs," the Seventh Circuit *still* found that the plaintiffs' allegations survived a motion to dismiss, reversing the district court below. *Delisle*, 73 F.4th at 528.

Indeed, Notre Dame makes almost no effort to factually distinguish Mr. Suszka's allegations from the relevant precedent. Instead, Notre Dame's arguments primarily involve (1) attempting to distinguish this case on legal or procedural grounds and (2) making independent arguments based in Indiana contract law. The Court will evaluate each.

**1. Whether This Case is Distinguishable from the Relevant State or Federal Precedent.**

Mr. Suszka makes several arguments attempting to explain why the relevant state and federal precedent does not apply, even if the facts are on-point.

**a. Differing Pleading Standards**

First, Notre Dame attempts to distinguish *Spiegel* on the grounds that it used the Indiana analogues to Rule 8 and Rule 12(b)(6), which are "more lenient" than the federal standards because they rely on the older *Conley* "any set of facts" pleading standard superseded by *Iqbal* and *Twombly*'s "plausibility" analysis. (ECF 19 at 16). *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007) (citing *Conley v. Gibson*, 355 U.S. 41 (1957)). But this argument fails on several grounds. First, for the discrepancy between the federal and state pleading standards to be relevant, the allegations in *Spiegel* would need to sit in a grey zone, barely clearing the *Conley*-based state pleading bar but not being "plausible" as required by *Iqbal* and *Twombly*. *Id.* at 547. Yet the court's reasoning in *Spiegel* nowhere suggests that the plaintiff's allegations were in this minimal state. The court did not describe them as "barely" clearing the pleading bar, and in fact referenced the large number of specific allegations in the plaintiff's complaint. 186 N.E.3d at 1159. Nothing in *Spiegel* suggests that the plaintiff's allegations would not have been plausible under *Iqbal* and *Twombly*.

Any remaining ambiguity about whether these types of allegations are sufficient to clear the federal pleading bar is resolved by *Hernandez*, *Gociman*, and *Delisle*, which

all held that lawsuits with a set of allegations almost identical to the ones in this lawsuit were sufficient to survive dismissal. 63 F.4th 661; 41 F.4th 873; 73 F.4th 523.

### b. Differing State Law

Similarly, Notre Dame argues that *Hernandez*, *Gociman*, and *Delisle* are inapposite because they applied Illinois rather than Indiana contract law. Notre Dame is certainly correct that the Seventh Circuit's discussion of Illinois law does not determine this Court's understanding of Indiana law. Yet the Seventh Circuit's interpretation of Rule 12(b)(6) is binding on this Court. Moreover, the Seventh Circuit's analysis in those cases closely tracks the Indiana Court of Appeals' analysis in *Spiegel*.[2] In fact, Notre Dame extensively references the Seventh Circuit's discussion in their own arguments. (ECF 19 at 10, 12, 13, 14; 27 at 2, 4, 5). This suggests that the Seventh Circuit's treatment of 12(b)(6) in those cases, even while applying Illinois law, is at least highly relevant if not actually binding on this set of facts.

### c. Contested Waiver Clause

Finally, Notre Dame tries to distinguish the Seventh Circuit's precedent on the grounds that in *Gociman*, there was a factual dispute about the existence of a disclaimer in the academic calendar in which the defendant reserved the right to "change, at any time, without notice . . . curriculum, course structure and content . . . notwithstanding any information set forth in the catalog." *Gociman*, 41 F.4th at 884. Notre Dame argues

---

[2] *Compare Spiegel*, 186 N.E.3d at 1158 *with Hernandez*, 63 F.4th at 667 (listing similar elements of a contract claim); *Spiegel*, 186 N.E.3d at 1158 *with Gociman*, 41 F.4th at 873 (listing similar definition of implied contract); *Spiegel*, 186 N.E.3d at 1159–60 *with Delisle*, 73 F.4th 525 (evaluating similar pieces of evidence to infer the existence of an implied contract).

that this case is different because it is undisputed that there is a disclaimer in the bulletin which gives it the right to revise "the course offerings and requirements of the University of Notre Dame." (ECF 24 at 21).

But there are several problems with this argument. First, while the waiver's existence was disputed in *Gociman*, the Seventh Circuit *also* emphasized that the alleged waiver clause's meaning was "better resolved . . . after the motion-to-dismiss stage"—specifically, on the question of "whether the reservation of rights, which does not expressly refer to emergencies or other force majeure events, reasonably applies to the pandemic." *Gociman*, 41 F.4th at 884. The court reiterated this principle in *Hernandez*, where it emphasized that "whether the . . . course-catalog disclaimer . . . reasonably appl[ies] to the pandemic" was a question "better suited for a later time when there has been further factual development." *Hernandez*, 63 F.4th at 669 (quoting *Gociman*, 41 F.4th at 884) (internal quotations omitted). Indeed, the only post-*Gociman*/*Hernandez/Delisle* COVID contract case cited by Notre Dame was decided on summary judgment, *not* a motion to dismiss. *See Eddlemon v. Bradley Univ.*, No. 20-CV-1264, 2025 WL 978151, at *7 (C.D. Ill. Mar. 31, 2025). Following the Seventh Circuit and fellow district courts, this Court declines to conclusively interpret the meaning of an ambiguous waiver clause at the Rule 12(b)(6) dismissal stage. The parties' dispute over the clause's meaning cuts against dismissal, not in favor of it.

### d. Other Language

Notre Dame also makes various arguments based on excerpted discussion from the Indiana and Seventh Circuit opinions. For example, it argues that Mr. Suszka "must point to an identifiable contractual promise" made to the student. (ECF 27 at 5 (quoting *Gociman*, 41 F.4th at 883–4)). Notre Dame argues that no promise was made here, because Mr. Suszka points only to "categories of documents where such a promise *might* be found." (ECF 27 at 6) (emphasis in original). But Mr. Suszka makes allegations regarding the same types of evidence the Seventh Circuit looked to in *Gociman* and the Indiana Court of Appeals looked to in *Spiegel*— "catalogs, registration . . . pre-pandemic practice, and different charges for . . . online versus on-campus programs." *See Gociman, 41 F.4th at 884*; *supra* pages 4–6. Notre Dame does not explain how the sources in those cases were sufficient to constitute "an identifiable contractual promise," while Mr. Suszka's are not.

Similarly, Notre Dame repeatedly cites the Seventh Circuit's discussion that "some [covid-19 related cases] will survive a motion to dismiss, and others will not." (ECF 19 at 3 (citing *Hernandez*, 63 F.4th at 669); *see also* ECF 19 at 9, 17, 19; 27 at 3, 15). Notre Dame acts as if this language is a talisman under which *no* COVID contract claims can survive. But that completely overlooks the key question: whether *this* is one of the cases that "will survive." The quote does nothing to serve Notre Dame's argument.

### 2.   Whether Principles of Contract Law Require Dismissal in This Case

Notre Dame also makes several arguments based in state contract law. The Court will address each in turn.

### a.   Heightened Standard for Academic Determinations

In some types of contract lawsuits against educational institutions in Indiana, plaintiffs are held to a higher standard under which they must show that the university acted "illegally, arbitrarily, capriciously, or in bad faith." *Brater*, 981 N.E.2d at 1240. Notre Dame argues that the bad faith standard applies here, and thus that Mr. Suszka must not only show that Notre Dame breached a contract but that it acted in bad faith.

But Indiana courts have made clear that this standard only covers matters that involve the "professional judgment of trained educators." *Neel v. Ind. Univ. Bd. of Trs.*, 435 N.E.2d 607, 611 (Ind. Ct. App. 1982) (quoting *Olsson v. Bd. of Higher Ed.*, 49 N.Y.2d 408, 413, 402 N.E.2d 1150, 1152 (1980)). The purpose of the rule is to avoid "overrid[ing] an academic determination." *Brater*, 981 N.E.2d at 1240. Thus, the rule applies to situations involving "academic discipline and academic achievement." *Spiegel*, 186 N.E.3d at 1160. At the same time, the Indiana Court of Appeals has made a distinction between those situations and "the provision of goods and services in an academic setting," in which there is "no precedent requiring proof of bad faith in breach-of-contract cases." *Id.* Moreover, it has specifically identified the matter of remote

education or student fees as one involving "the provision of goods and services" rather than an "academic determination." *Id.*[3]

In this case, the Indiana Court of Appeals' determination is further buttressed by Notre Dame's own argument. Notre Dame asserts that its switch to online learning involved the "professional judgment of trained educators," but this is inconsistent with its assertion that it had no choice but to switch to online education in order to avoid violating Indiana law. (ECF 19 at 22). That rationale would not appear to leave room for the "professional judgment of trained educators." *Neel*, 435 N.E.2d 607, 611. Notre Dame has not shown that the heightened bad-faith standard applies here.

### b. Public Policy

Notre Dame argues that, if it had maintained in-person instruction in accordance with Mr. Suszka's supposed in-person contract, this would have violated Indiana law and public policy at the time, as enforced by the Indiana Governor's executive orders. (ECF 27 at 8). Thus, Notre Dame is effectively raising an impossibility defense.[4]

Even so, Indiana law is clear that impossibility defenses, especially in the area of education contracts affected by COVID-19, are matters properly raised after the motion to dismiss stage. *Spiegel*, 186 N.E.3d at 1161. And even if Notre Dame was successful in

---

[3] Notre Dame also argues that in *Spiegel*, the Indiana Court of Appeals created a new rule that "fails to explain its newly created narrowing of prior opinions' language." (ECF 19 at 22). But it is not for this Court to question unambiguous state court precedent. *See Begalke v. Sterling Truck Corp.*, 480 F. Supp. 2d 1146, 1154 (W.D. Wis. 2007) ("Federal courts are not free to rewrite state law or overrule the decisions of state courts."); *see also Erie R. Co. v. Tompkins*, 304 U.S. 64, 70 (1938).

[4] Notre Dame argues that it is not raising an impossibility defense but an illegality defense, because it was "*illegal* for students to attend" the university. (ECF 27 at 8) (emphasis in original). But for a contract to be void for illegality, it must be illegal at the time it was made instead of rendered illegal by subsequent government action. *Louisville & C. Ry. Co. v. Frawley*, 110 Ind. 18, 9 N.E. 594, 600 (Ind. 1886). And either way, implications would be the same as in an impossibility defense: Mr. Suszka would not have a remedy in contract but might still have one in unjust enrichment. *See Burt v. Bowles*, 69 Ind. 1, 7 (Ind. 1879).

raising the defense, it might still be liable for unjust enrichment claims due to the

contract's cancellation. *See Gilchrist v. Hatch*, 183 Ind. 371, 106 N.E. 694, 702 (1914).

### c. Puffing Statements

Notre Dame argues that any marketing statements about in-person experiences

at Notre Dame were essentially "puffing statements" rather than concrete promises.

(ECF 19 at 13). First, marketing statements are only one aspect of the patchwork of

various documents and statements alleged by Mr. Suszka, and it is far from clear that

the exclusion of one (or even several) allegations would render Mr. Suszka's contract

claim implausible under *Iqbal* and *Twombly*. Furthermore, Notre Dame's "mere puffing

statements" argument is belied by the Seventh Circuit and Indiana state courts, which

have looked to such statements as relevant to whether plaintiffs fairly expected an in-

person education. *See, e.g.*, *Spiegel*, 186 N.E.3d at 1160 (acknowledging Defendants'

"mere marketing statements" argument but holding that "Plaintiffs' breach-of-contract

claims are based on more than mere puffery"); *Delisle*, 73 F.4th at 527 (recognizing

relevance of marketing statements as evidence of a university's prior practice).

Finally, Notre Dame's argument mischaracterizes Indiana contract law's

definition of "puffing statements." Indiana courts are clear that "puffing statements"

consist of "unverifiable opinion" rather than "ascertainable fact." *Kesling v. Hubler

Nissan, Inc.*, 997 N.E.2d 327, 332 (Ind. 2013); *Tutwiler v. Snodgrass*, 428 N.E.2d 1291, 1295

(Ind. Ct. App. 1981). For example, a statement like "our product is the best" would be

puffery because it is not an ascertainable fact. *See, e.g.*, *Martin Rispens & Son v. Hall

Farms, Inc.*, 621 N.E.2d 1078, 1082 (Ind. 1993). Thus, puffery is "meaningless sales

patter," "empty superlatives on which no reasonable person would rely," or "the kind of talk which no sensible man takes seriously." *Kesling v. Hubler Nissan, Inc.*, 997 N.E.2d 327, 333 (Ind. 2013).

Maybe some elements of Notre Dame's statements constitute non-actionable puffery. For example, a contract claim based on an assertion that Mr. Suszka did not experience a "unified campus community" at Notre Dame, as stated in the campus materials, might fail to state a concrete contractual obligation. (ECF 1 ¶ 53). This claim would fail because the existence of "unified campus community" is a non-ascertainable matter which could not form the basis for contractual reliance. But whether education occurs on or off campus is a distinctly ascertainable matter, and very well could form the basis for contractual reliance. Even in making non-ascertainable statements about each residence hall being "a world unto itself" or the campus grounds featuring "breathtaking views," Notre Dame appears to presume a very ascertainable fact—that the student would be *on campus* to experience those things. (*Id.* ¶¶ 52, 53).

### d.  Unpredictable Damages

Notre Dame also argues that Mr. Suszka's damages are speculative because they "require[] this Court to compare the value of in-person and virtual education" and "open[] the door for myriad potential 'breach of contract' claims against universities that would require courts to qualitatively value intrinsically academic decisions." (ECF 19 at 23). First, this argument is again foreclosed by both Seventh Circuit and Indiana state precedent, which, in allowing similar claims to pass the motion to dismiss stage, presumed that the level of speculation regarding damages was not too high for

16

potential relief. *See generally Spiegel*, 186 N.E.3d 1151; *Hernandez, 63 F.4th 661; Gociman*, 41 F.4th 873; *Delisle*, 73 F.4th 523. Second, Notre Dame is wrong that allowing Mr. Suszka's claim to proceed would "open the door" to a flood of subjective academic claims, because as discussed above, those claims will often be foreclosed by Indiana's "good faith" standard for claims based on academic judgment. *See supra* pages 13–14.

## II. Unjust Enrichment

Notre Dame also argues that Mr. Suszka's unjust enrichment claims should be dismissed. First, it argues that Mr. Suszka may not simultaneously make a claim for contractual breach and unjust enrichment because the latter presumes the non-existence of a contract. (ECF 19 at 24). It is correct that Mr. Suszka would not be able to *win* on both claims. Yet as dictated by Federal Rule of Civil Procedure 8(a)(3), parties may make alternate claims. Furthermore, it is not true that Mr. Suszka's unjust enrichment claim is inconsistent with the existence of a contract. As Indiana courts have noted, unjust enrichment is the proper remedy when a contractual obligation is discharged through illegality or impossibility—including because of a "governor's executive orders." *Spiegel*, 186 N.E.3d at 1161 (citing *Shaffer v. George Washington Univ.*, 27 F.4th 754, 769 (D.C. Cir. 2022)). Thus, it would be consistent for Mr. Suszka to argue that (1) a contract existed between himself and Notre Dame (2) the contract may have been excused by emergency, and (3) Notre Dame was unjustly enriched by being excused from performance after being paid.

Notre Dame argues that Mr. Suszka has not properly made specific allegations in his unjust enrichment claim—that he "failed to plead any of the underlying facts, the

identity of the parties, [or] their basis for standing or jurisdiction." (ECF 19 at 25). But Mr. Suszka *does* make specific allegations: that "[b]y assessing and accepting the tuition and fees for the Spring semester, the University agreed to . . . provide an in-person and on-campus education services" and that, by "retain[ing] the benefits of the amount of tuition and fees that Plaintiff and Class members have provided," Notre Dame was unjustly enriched. (ECF 1 ¶¶ 97, 98). Dismissal of Mr. Suszka's unjust enrichment claim is not proper.

### III.   Class Action Allegations

Notre Dame has moved to strike the class allegations from Mr. Suszka's complaint, arguing that they are barred under an Indiana law that "A claimant may not bring, and a court may not certify, a class action lawsuit against [a university] for loss or damages arising from COVID-19 in a contract, implied contract, quasi contract, or unjust enrichment claim." Ind. Code § 34-12-5-7 (2021) (hereinafter "Class Restriction Law").

Mr. Suszka does not dispute that this statute, if it applied here, would foreclose any class action allegations. Rather, the parties dispute whether this rule is displaced by Federal Rule of Civil Procedure 23, which provides its own rules for when plaintiffs can file a class action.

In *Erie*, the Supreme Court held that in disputes involving state law, federal courts apply state substantive law and federal procedural law. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 91–92 (1938). Under this analysis, whether a law is "substantive" or

"procedural" depends on whether the law "significantly affect[s] the result" of a case. *Guaranty Tr. Co. v. York,* 326 U.S. 99, 109 (1945).

At the same time, the *Erie* analysis assumes that Congress is silent on whether state or federal law applies—it does not speak to whether Congress has the authority to explicitly supplant state law, either procedural or substantive. *See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.,* 559 U.S. 393, 398 (2010). In federal court, "Congress has undoubted power to supplant state law, and undoubted power to prescribe rules for the courts it has created, so long as those rules regulate matters 'rationally capable of classification' as procedure." *Id.* at 406 (plurality opinion) (quoting *Hanna v. Plumer*, 380 U.S. 460, 472 (1965)). If it chooses to do so, then that law applies, displacing the *Erie* analysis.

Congress did exactly this when it passed the Rules Enabling Act ("REA") in 1934, which authorized the Supreme Court to adopt uniform rules of procedure for district courts. 28 U.S.C. § 2072. Rather than requiring an *Erie* analysis, The Rules Enabling Act provides its own, separate rule for deciding when a federal procedural rule applies: so long as it does not "abridge, enlarge, or modify any substantive right." 28 U.S.C. § 2072(b). Thus, if a rule of procedure "answers the question in dispute," it applies, "unless it exceeds statutory authorization or Congress's rulemaking power." *Shady Grove*, 559 U.S. at 398.

The Court must first determine whether Rule 23 excludes the Indiana Class Restriction Law. If it does not, then the parties do not debate the additional applicability of Rule 23. If it does, then the Court must determine whether the Rules Enabling Act

provides for the applicability of Rule 23 (and displacement of the Class Restriction Law) in this case.

### 1. Whether Rule 23 Excludes the Class Restriction Law

Before analyzing Rule 23 under the REA, there is a preliminary question as to whether Rule 23 can operate alongside the Indiana Class Restriction Law, or whether it completely displaces it. In other words, is Rule 23 a *minimum* threshold that provides the necessary requirements for a class action (which could be supplemented by other state requirements), or is it a *permissive* rule that dictates the *sufficient* requirements for a class action? If Rule 23 is the former, then it would operate alongside additional state requirements for class actions (such as the Class Restriction Law).

The Supreme Court resolved this question in *Shady Grove*. 559 U.S. at 396. There, New York state law prohibited class actions in suits seeking penalties or statutory minimum damages. *Id.* The plaintiff (and the Second Circuit) made an argument almost identical to Mr. Suszka's argument here: that "[the state rule] and Rule 23 do not conflict because they address different issues." *Id.* at 399. Specifically, the plaintiff reasoned that Rule 23 "concerns only the criteria for determining whether a given class can and should be certified" while the state rule "address[ed] an antecedent question: whether the particular type of claim is eligible for class treatment in the first place." *Id.* Notre Dame's argument mirrors this, asserting that Rule 23 is the "procedural vehicle for class actions" while the Class Restriction Law is a "recognized limitation on liability" which "targets a narrow category of claims." (ECF 31 at 4).

20

*Shady Grove* rejected this argument, holding that "the line between eligibility and certifiability is entirely artificial." 559 U.S. at 399. Rather, the key question is whether, in any sense, a rule is a "precondition[] for maintaining a class action." *Id.* The Court went on to emphasize the word "may" in Rule 23: the rule states that "[a] class action may be maintained" rather than that "a class action may be permitted." *Id.* at 399–400 (emphases omitted). This language suggests that Rule 23 was intended to be permissive rather than merely a minimum requirement. *See id.* While the Federal government may occasionally make carveouts from Rule 23 due to its "ultimate authority over the Federal Rules of Civil Procedure," there is no room for states to do so. *Id.* at 400. Thus, "Rule 23 permits all class actions that meet its requirements, and a State cannot limit that permission by . . . enacting another [statute] that imposes additional requirements." *Id.* at 401.

Notre Dame argues that there is room for the Class Restriction Law to be enforced through Rule 23(d)(1)(D), which is the general procedural clause authorizing courts to strip the class allegations from insufficiently alleged complaints. But that portion of Rule 23 does not speak to the *criteria* for when a class action allegation is sufficient. The criteria question is addressed by Rules 23(a) and (b), which define the conditions under which "[a] class action may be maintained." As *Shady Grove* decided, those criteria are exclusive of any additional state criteria.

### 2. Whether Rule 23 Applies Under the REA

Under *Shady Grove*, there are two options: Either Rule 23 applies, displacing the Class Restriction Law, or it does not. Thus, the key question is whether the REA

authorizes the applicability of Rule 23 in this case. The REA provides that a procedural rule is valid so long as it does not "abridge, enlarge, or modify any substantive right." 28 U.S.C. § 2072(b). In *Shady Grove*, the Court also debated the proper method for interpreting that portion of the REA. An opinion written by Justice Scalia argued that this language does not call for an analysis of whether a *state* right is modified, but only looks to the federal rule itself. Justice Scalia rejected a state-based inquiry because it would require courts to decide whether the "subjective intentions of the state legislature" were to create a right, "condemn[ing]" federal judges to "pore[] through state legislative history." *Shady Grove*, 559 U.S. at 404–5. Additionally, the federal rule could apply differently in different states, depending on whether those states had "rights" that were affected by the statute, thereby leading to a state-by-state patchwork of federal procedural law. *Id.*

Instead, Justice Scalia called for an analysis that looks only to the federal rule itself, asking if the federal rule "really regulate[s] procedure." *Id.* at 410 (quoting *Sibbach v. Wilson & Co.*, 312 U.S. 1, 14 (1941)) (plurality opinion). If it does, the federal rule controls. Thus, Justice Scalia argued that the language of "abridge, enlarge, or modify" in the REA refers to what the federal procedural rule purports to do, not whether state rules are affected by it. "What matters is what the rule itself regulates" not whether "the rule affects a litigant's substantive rights." *Shady Grove*, 559 U.S. at 407 (plurality opinion).

That portion of Justice Scalia's opinion was only a plurality. A concurrence written by Justice Stevens advocated for a different approach. Justice Stevens argued

22

that whether a federal rule is valid would depend "in part, on the nature of the state law that is being displaced by the federal rule." *Shady Grove*, 559 U.S. at 419 (Stevens J., concurring). Justice Stevens held that the proper determination for whether a federal rule applied was whether it "actually is part of a State's framework of substantive rights and remedies." *Id.*

Notre Dame's argument tracks Justice Stevens' proposed analysis, arguing that Rule 23 is invalid against the Class Restriction Law because it is a part of Indiana's framework of substantive rights and remedies by furthering the substantive policy of "protect[ing] certain defendants from pandemic-related mass litigation exposure." (ECF 19 at 4). In support of this argument, Notre Dame points to the historical context of the statute's enactment in the wake of COVID-19, the "existential threat to many of Indiana's postsecondary institutions" posed by these types of lawsuits, and the statutory scheme, which places the Class Restriction Law within the "Prohibited Causes of Actions" portion of the Indiana Code, alongside other substantive rules. (ECF 19 at 4).

But regardless of whether this argument would have been successful under Justice Stevens' approach in *Shady Grove*, that line of argument was squarely foreclosed on January 20, 2026, when the Supreme Court decided *Berk v. Choy*. 146 S. Ct. 546 (2026).[5] In *Choy*, the Court evaluated the validity of Rule 8 of Civil Procedure, and whether it displaced a state pleading requirement law. In holding that the federal rule

---

[5] *Choy* had not yet been decided when Defendant first made the motion to strike on October 27, 2025. (ECF 20). After the decision, Mr. Suszka filed a notice of supplemental authority on January 29, 2026. (ECF 28). The parties then made additional argument in briefing. (ECF 31; 32).

controlled, the Court adopted Justice Scalia's plurality approach in *Shady Grove*. The Court rejected an analysis that would look to the "practical effect on the parties' rights" and held that the key question was whether a rule "really regulates procedure." *Choy*, 146 S. Ct. at 556 (quoting *Shady Grove*, 559 U.S. at 410 (plurality opinion)). The Court thus affirmed that the "abridge, enlarge, or modify" language in the REA looks to what "the Rule itself *regulates*" rather than how it affects any state rights or rules. *Id.* (quoting *Shady Grove*, 559 U.S. at 407 (plurality opinion)) (emphasis in original). Under this approach, "the substantive nature of [a state] law, or its substantive purpose, *makes no difference*." *Id.* at 557 (quoting *Shady Grove*, 559 U.S. at 409 (plurality opinion) (emphasis in original)). Thus, Notre Dame's references to the Class Restriction Law's policy aims, statutory scheme, or substantive nature have no bearing on whether Rule 23 is valid under the REA. Rather, the only question is whether it regulates procedure. If it does, then it applies and excludes any other state rule that "answers the question" as to whether a class action may be filed. *Choy*, 146 S. Ct. at 552 (quoting *Shady Grove*, 559 U.S. at 398). And *Shady Grove* held that Rule 23 does regulate procedure. *Shady Grove*, 559 U.S. at 398–405. Together, *Choy* and *Shady Grove* establish both that Rule 23 is valid under the REA, and that Rule 23 operates to the exclusion of any other state rules that dictate the conditions under which a "class action may be maintained." Fed. R. Civ. P. 23(b). This includes Indiana Code Section 34-12-5-7, which cannot provide a basis to strike Plaintiff's class allegations.[6]

---

[6] Plaintiff has not yet made a motion for class certification under Rule 23. This order does not certify a class under Rule 23, nor does it address other possible arguments against class certification.

24

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's motion to dismiss

(ECF 18), and motion to strike class allegations from the complaint (ECF 20).


SO ORDERED on May 26, 2026.


        /s/ *Cristal C. Brisco*

CRISTAL C. BRISCO, JUDGE
UNITED STATES DISTRICT COURT

25